# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

UNICOLORS, INC.,

   Plaintiff,

  v.

NB BROTHER CORP., et al.,

   Defendants.

Case No. CV 16-02268-MWF (JPRx)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

   This matter came on for trial before the Court sitting without a jury on August 22 and 23, 2017. Following the presentation of evidence and the parties' closing arguments, the matter was taken under submission.

   Having carefully reviewed the record and the arguments of counsel, as presented at the trial and in their written submissions, the Court now makes the following findings of fact and reaches the following conclusions of law under Rule 52 of the Federal Rules of Civil Procedure. Any finding of fact that constitutes a conclusion of law is also hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is also hereby adopted as a finding of fact.

The following witnesses were called and examined by the parties in the order recited below:

On August 22, 2017, Chan Yong Jeong appeared on behalf of Plaintiff Unicolors, Inc. ("Unicolors") and gave an opening statement. Miles L. Prince appeared on behalf of Defendant NB Brother Corp. ("NB Brother") and gave an opening statement.

On the same day, following opening statements, Mr. Jeong examined **Nader Pazirandeh**, the president of Unicolors. Mr. Prince cross-examined Mr. Pazirandeh; Mr. Jeong conducted a redirect examination; and Mr. Prince conduced a recross. Mr. Jeong next examined **Sung "Jonathan" Rho**, a "design advisor" and president of a company called Design Guard, Inc., who provides freelance "design advisory" services to Unicolors in exchange for a fixed monthly fee. Mr. Prince cross-examined Mr. Rho.

On August 23, 2017, Mr. Prince examined **Allen Yang**, the founder and owner of NB Brothers. Mr. Jeong cross examined Mr. Yang; Mr. Prince conducted a redirect examination; and Mr. Jeong conducted a recross.

On August 23, 2017, following Mr. Yang's testimony, Mr. Jeong made a closing argument on behalf of Unicolors and Mr. Prince made a closing argument on behalf of NB Brother.

## I.     <u>FINDINGS OF FACT</u>

### A.    <u>Background</u>

#### 1. Unicolors

1. Unicolors is based in Los Angeles, California. Mr. Pazirandeh, who has been working for Unicolors since 1999, testified that the "heart of [Unicolors'] business is creating designs."

2. Unicolors employs 25 designers who create designs that can ultimately be printed on fabric, and about eight salespeople who then present the designs, either already printed on fabric or in digital form, to Unicolors' customers.

3. Unicolors obtains copyright registrations for most of its designs, except for the ones that it doesn't "see any future" for. In order to save money, Unicolors registers as many designs as possible on a single copyright certificate.

4. Unicolors makes money primarily by selling fabric by the yard and licensing its designs (also on a per-yard basis) to garment manufacturers, and sometimes sells finished garments. Its customers are primarily garment manufacturers who make and sell clothing to retailers.

5. Unicolors tries to avoid selling fabric or licensing its designs to importers of finished garments, though Mr. Pazirandeh understands that sometimes "importers get ahold of [Unicolors'] designs."

6. In addition to sending salespeople out to meet with customers, Unicolors maintains a large showroom containing fabrics printed with its designs. Mr. Pazirandeh testified that "designers from everywhere … come and go through" the various design samples. Unicolors does not keep records of who visits its showroom. Mr. Pazirandeh would not knowingly allow an importer of finished garments into the showroom, but Unicolors takes no specific steps to prevent it.

### 2. NB Brother

7. NB Brother, a garment importing company founded in 2009, has an office in Hacienda Heights, California and a warehouse in Vernon, California. Prior to July 2017, NB Brother's warehouse was located on Olympic Boulevard in Los Angeles, California. NB Brother has two employees, and Mr. Yang is its owner.

8. Since its inception, NB Brother has been in the business of importing finished garments. It has never designed or manufactured fabric or finished garments, or commissioned the manufacture of finished products constructed of particular fabrics.

9. From 2014 through 2016, NB Brother had approximately 20 to 30 customers, most of whom are located in downtown Los Angeles.

10. Yang testified that NB Brother purchases all of its finished garments from clothing wholesalers in China. The wholesalers maintain storefronts in a structure similar

to, but many times larger than, an American-style mall, which contains many different wholesalers.  Mr. Yang periodically travels to China to purchase finished garments on behalf of NB Brother.

11. The clothing wholesalers that NB Brother purchases from represent that they manufacture the garments themselves in their own factories, and that NB Brother is permitted to resell the garments in the United States.

12. NB Brother first purchases clothing from the Chinese wholesalers and then presents the clothing to its customers in Los Angeles.  It does not solicit specific customer requests and then attempt to locate clothing that satisfies those requests.  Mr. Yang testified that if NB Brother's customers "want the items [NB Brother] already ha[s] in stock, [NB Brother] will sell it to them.  [If] [t]hey are not interested, then they won't buy from [NB Brother]."

### B. The Alleged Copyright Infringement

13. Unicolors has valid ownership of SM1357 (the "Subject Design"), registered with the United States Copyright Office under Registration Number VA 1-901-365, and the Subject Design is original.  This is a picture of the Subject Design (Plaintiff's Exhibit 2):



14. Unicolors created the Subject Design in 2013 and obtained a copyright on January 6, 2014.  Unicolors provided fabric samples bearing the Subject Design to prospective customers, which were primarily companies that supplied clothing to Los

Angeles and New York retailers.  Between December 2014 and May 2015, Unicolors sold 36,614.10 yards of fabric bearing the Subject Design to various manufacturer-customers.

15. In April 2015, NB Brother purchased 1,300 pair of "NH-52"-style women's shorts (the "NH-52 Shorts") from Chinese vendor Yiwu Longshun Import and Export Co., Ltd. ("Longshun") for $1.65 per unit.  On May 20, 2015, NB Brother resold all 1,300 pair NH-52 Shorts to a company called "Superline" for $1.85 per unit.  This is a picture of a pair of NH-52 Shorts (Plaintiff's Exhibit 16):



16. Yang did not specifically recall purchasing the NH-52 Shorts from Longshun, but he recalled that, prior to NB Brother being sued in this action, his general practice when purchasing patterned clothing was to ask the representatives of Chinese vendors such as Longshun whether there was "anything wrong with [the] merchandise" and whether it was "okay for [him] to sell [the merchandise] in the U.S.," in an effort to avoid copyright infringement.  Yang was consistently told that "it's not a problem," and he had no reason to suspect otherwise because "no problems arose with respect to those issues."

17. Yang testified that he had never visited the design rooms of Unicolors or any other fabric producer, and had never heard of Unicolors before this lawsuit.

1        18.     Unicolors commenced this action against NB Brother and several other
2   defendants in April 2016.  Unicolors alleged that, by purchasing and selling the NH-52
3   Shorts without Unicolors' permission, NB Brother is liable under theories of direct,
4   vicarious, and/or contributory copyright infringement.
5        19.     Until being sued by Unicolors here, NB Brother had never been sued for
6   copyright infringement.
7        20.     Since being sued by Unicolors, NB Brother has required Chinese wholesalers
8   to provide proof of U.S. copyright registrations before purchasing patterned garments.
9        21.     Applying the law as stated below, the Court **FINDS** that the patterns are
10  substantially similar, such that the pattern of Exhibit 16 was copied from Exhibit 2.  The
11  question, then, is whether NB Brother is liable for that copying.

## II.     CONCLUSIONS OF LAW

### A.     First Claim: Direct Copyright Infringement

1.      To prevail on a direct copyright infringement claim, a plaintiff must show (1) that it owns a valid copyright on the allegedly infringed work, and (2) that the defendant "copied" protected elements of that work.  *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000); 4 Nimmer on Copyright § 13.01 ("Reduced to most fundamental terms, there are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant.").  It is undisputed that Unicolors owns a valid copyright on the Subject Design.  The focus is thus on the issue of "copying."

2.      Absent direct evidence of copying, which Unicolors did not present, a plaintiff can establish "copying" by showing (1) that the defendant had access to plaintiff's work and (2) that the two works are "substantially similar." *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).

3.      Some courts have held that, "in rare cases, a plaintiff can prove copying even without proof of access if he can show that the two works are not only similar, but are so strikingly similar as to preclude the [possibility] of independent creation." *Gable v. Nat'l*

*Broadcasting Co.*, 727 F. Supp. 2d 815, 823 (C.D. Cal. 2010) (citing *Meta-Film Assoc., Inc. v. MCA Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984)). This rule only applies where, "as a matter of logic, the only explanation [for the similarities] between the two works must be 'copying rather than … coincidence, independent creation, or prior common source.'" 4 *Nimmer on Copyright* § 13.02 (2017) (internal quotation marks and citations omitted). Unicolors argues that the pattern of the Subject Design and the NH-52 Shorts are so "strikingly similar" that a showing of access is unnecessary. The Court disagrees. A side-by-side comparison of the two designs reveals many similarities; they are both Aztec-style patterns containing a mix of angular shapes such as triangles and diamonds. But there are also differences in the color scheme and in the arrangement of the various shapes. For example, the Subject Design contains two rows of long, narrow triangles with their points facing one another, bisected by a row of horizontal diamonds; the NH-52 Shorts do not. While the patterns of the NH-52 Shorts and the Subject Design share common elements, they are not the same. Accordingly, the Court declines to find infringement under the "striking similarity" theory; a showing of both access and substantial similarity is required.

  4. "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *L.A. Printex*, 676 F.3d at 846 (internal quotation marks and citations omitted). "Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work." *Id.* (quoting *Three Boys Music*, 212 F.3d at 482). However, "[a]ccess may not be inferred through mere speculation or conjecture." 4 Nimmer on Copyrights § 13.02 (2017) (citations omitted).

  5. For the duration of this action – indeed through the bench trial – the parties have seemingly been laboring under the assumption that the key issue, apart from the degree of similarity between the Subject Design and the NH-52 Shorts patterns, is whether or not *NB Brother* had access to and copied the Subject Design. Mr. Yang's

1  uncontroverted testimony made clear that NB Brother is solely in the business of
2  purchasing finished garments from China and reselling them in the U.S.  NB Brother does
3  not design or manufacture clothing, does not commission the manufacture of clothing out
4  of selected fabrics, and does not visit the showrooms of any fabric designers, including
5  Unicolors.  There is no evidence that NB Brother itself gained access to the Subject
6  Design and then copied it.

7       6.     The better question, which neither party has addressed, is whether *Longshun*
8  had access to, and thus may have copied, the Subject Design.  Unicolors has not presented
9  any direct evidence that Longshun accessed the Subject Design prior to selling the NH-52
10 Shorts to NB Brother, and it also hasn't presented any circumstantial evidence that would
11 render the notion of Longshun accessing the Subject Design anything more than
12 speculation or conjecture.

13      7.     Unicolors has not presented evidence of any "chain of events" linking the
14 Subject Design and the NH-52 Shorts.  In connection with its summary judgment motion,
15 the only arguments Unicolors made regarding access were that (1) it sold a total of
16 36,614.10 yards of fabric printed with the Subject Design between December 2014 and
17 May 2015, and (2) NB Brother's principal place of business is 1.6 miles away from
18 Unicolors' principal place of business.  Unicolors presented no new theories or evidence
19 of access at trial.  The distance between NB Brother's and Unicolors' offices has no
20 bearing on the question of Longshun's opportunity to access the Subject Design, as
21 Longshun is based in China and NB Brother purchased the NH-52 Shorts from Longshun
22 as finished products rather than asking Longshun to manufacture shorts out of fabric
23 imprinted with a pattern similar to the Subject Design.  Unicolors has not established
24 Longshun's access to the Subject Design under a "widespread dissemination" theory
25 either.  In its statement of uncontroverted facts filed in connection with its summary
26 judgment motion, Unicolors stated that it "provided fabric samples [of the Subject Design]
27 to prospective customers, who are primarily suppliers to the Los Angeles and New York
28 fashion industry," and then sold "approximately 36,614.10 yards of the fabric" to some of

those customers. Unicolors has presented no evidence that 36,000 or 37,000 yards of fabric is a substantial amount in the context of wholesale textile sales. Without anything else (and Unicolors has not presented anything else), it would be mere speculation to conclude that Longshun, a Chinese company, had the opportunity to view and copy the Subject Design as a result of Unicolors' sale of 36,614.10 yards of fabric in the U.S.

8. Therefore, the Court concludes that Unicolors has failed to establish that NB Brother (independently or through Longshun) copied the Subject Design. NB Brother is thus not liable for direct copyright infringement.

**B.     Second Claim: Vicarious Copyright Infringement**

9. "A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and 'has the right and ability to supervise' the infringing activity." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quoting *A&M Records, Inc. v. Naptster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)) (additional citations omitted) (emphasis in original). "Those elements constitute independent requirements; each must be demonstrated to render the defendant vicariously liable." 3 Nimmer on Copyright § 12.04 (2017).

10. Based upon the evidence presented at trial and in connection with Unicolors' motion for summary judgment, the only possible primary actor through whom NB Brother could be liable for vicarious infringement is Longshun. However, given the lack of evidence regarding Longshun's access to the Subject Design, Unicolors has not established that there is any underlying infringement and thus cannot possibly succeed on a vicarious infringement claim against NB Brother. Moreover, even if Unicolors could establish that Longshun copied the Subject Design, there is no evidence that NB Brother, a U.S.-based importer of finished garments with two employees, has the "right and ability to supervise" the activities of Longshun, a Chinese vendor. Accordingly, NB Brother is not liable for vicarious copyright infringement.

///

///

### C. Third Claim: Contributory Copyright Infringement

11. "One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of *another* may be liable as a contributory copyright infringer." *Ellison*, 357 F.3d at 1076 (internal quotation marks and citations omitted) (emphasis in original). "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'" *Napster*, 239 F.3d at 1019 (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

12. As with vicarious infringement, a prerequisite for contributory infringement is some underlying direct infringement. Again, based upon the evidence presented, Longshun is the only possible actor through whom Unicolors could hope to establish NB Brother's liability for contributory infringement, and Unicolors has failed to establish that Longshun copied the Subject Design. Moreover, even if Unicolors could establish that Longshun copied the Subject Design, there is no evidence that NB Brother acted with the requisite mental state to be contributorily liable for Longshun's infringement. "Contributory liability requires that the secondary infringer know or have reason to know of direct infringement." *Id.* at 1020 (internal quotation marks and citations omitted). While NB Brother's pre-lawsuit approach of verbally asking Chinese manufacturers such as Longshun whether it was "okay" to sell their garments in the United States cannot be called a belt-and-suspenders approach to avoiding copyright infringement, NB Brother was consistently told that it was "not a problem" and had no "problems" until this lawsuit. Thus, even if Unicolors had established underlying infringement, it did not establish that NB Brother knew or had reason to know of that infringement. Accordingly, NB Brother is not liable for contributory copyright infringement.

### III. VERDICT

The Court **FINDS** and **RULES** as follows:

On Unicolors' First Claim for direct copyright infringement, Unicolors failed to establish that either NB Brother or Longshun, the Chinese vendor from which NB Brother

purchased the NH-52 Shorts, copied the Subject Design, and thus failed to establish direct infringement. The Court thus finds in favor of NB Brother.

On Unicolors' Second Claim for vicarious copyright infringement, Unicolors failed to establish any underlying infringement by Longshun, the only entity through which NB Brother could be held vicariously liable, or that Unicolors had the right and ability to supervise Longshun's activities, and thus failed to establish vicarious infringement. The Court thus finds in favor of NB Brother.

On Unicolors' Third Claim for contributory copyright infringement, Unicolors failed to establish any underlying infringement by Longshun, the only entity through which NB Brother could be held contributorily liable, or that NB Brother knew or should have known of any infringement, and thus failed to establish contributory infringement. The Court thus finds in favor of NB Brother.

The Court will enter a separate judgment pursuant to Federal Rules of Civil Procedure 54 and 58(b).

Dated: October 3, 2017.

MICHAEL W. FITZGERALD
United States District Judge